[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff husband against the defendant wife. The parties were married on April 11, 1992, in Westport, Connecticut. There is one child issue of the marriage, Max Rubin, born December 12, 1995.
The plaintiff is 33 years of age. He is in good health and graduated from Muhlenberg College in Pennsylvania in 1988 with a major in English. Immediately after graduation, he worked for New York Life for two months and then went to work for his father's company, Kombi Limited, an importing company. He met the defendant on the job. She also was working for Kombi Limited.
Shortly after the parties returned from their honeymoon, plaintiff's father sold the business and started two new businesses, one called The Glove Source importing ski gloves and the other called The Hat Source. At present, the plaintiff earns $60,000 from The Glove Source and $40,000 from The Hat Source. He received a bonus of $5,000 this year, but one of $15,000 last year.
In May or June, 1998, the defendant indicated she was unhappy in their marriage. While they worked with a marriage counselor, this was unsuccessful. In the spring of 1999 both agreed that their marriage had broken down irretrievably and both started seeing others.
The defendant is 32 years of age. She states: "I am healthy." She runs three miles three to four times each week, rides a bike and rides horses. She is a graduate of Northeastern University with a B.S. degree, having graduated in 1989. She went to work for plaintiff's father immediately after graduation. When plaintiff's father sold his business shortly after the parties' honeymoon, she went to work in her own father's office as a receptionist. She held this job until Max was born. She returned to work when Max was old enough to enroll in a preschool program in the fall of 1998. She first worked 9:00 a.m. to 1:00 p.m. and in November and December worked 9:00 a.m. to 4:30 p.m. She quit this job in June, 1999 because it was too stressful. In July, 1999, she went to work for Miro Builders as a production manager. She earned $18.00 per hour and was advanced to $20.00 per hour shortly before she quit this job the beginning of December, 1999. She found the job was too exhausting and CT Page 7970 that she did not have sufficient knowledge of the building industry. She is now working part time for Boccarossa Insurance earning $12.00 per hour and working a three and a half hour day.
In the fall of this year, Max will be entering kindergarten at Greens Farms Public School in Westport. His hours will be 8:30 to 1:00 p.m. He is presently enrolled in a preschool program at the Westport Y. The tuition for this program is $483.00 per month and that has been paid by the plaintiff. During the summer, the Y has a summer program costing $870.00 per month and in the fall has an after school program costing $500.00 per month.
In November, the home of the parties was sold. Each of the parties moved into leased premises and each pays $2,000 per month rent. The defendant will receive $180,000 on the sale of the family home (plaintiff's exhibit 1) and the plaintiff will receive an amount between $122,500 and $180,000. The property was owned by the parties and the plaintiff's parents. See plaintiff's exhibit 9. The agreement between the parties is that neither party will claim any part of the other party's share of those proceeds.
The only other significant asset of the parties is the plaintiff's profit sharing plan with The Glove Source valued at $43,644 as of April of this year. Contributions to this plan were made entirely after the parties' marriage. While the defendant seeks half of this asset, the court finds that it would be inequitable to award any portion of this asset to the defendant. The defendant came into the marriage with her car and a small bank account. The agreement reached by her attorney for division of the proceeds of sale of the real property represents a fair division of the assets.
As noted in the plaintiff's financial affidavit, he is Vice President in charge of operations for Schuman Sullivan d/b/a The Hat Source. He is marketing manager for The Glove Source, and each business pays fifty percent of his income which he reports in his financial affidavit as $104,670.
Defendant's income has plummeted from $760 per week in October, 1999 (see plaintiff's exhibit 3) to $195 per week as reported in her May 30 financial affidavit. See plaintiff's exhibit 5. The $760 per week was earned while employed by Miro Builders.
Quite obviously the amount of alimony to be awarded in such a case is affected very greatly by the income capability of the parties. One half the plaintiff's salary is paid by a business owned by his father and a partner. The other half of his salary is paid by a business totally owned CT Page 7971 by his father. The defendant's income is derived from a part time position. She works while her four year old son is in preschool.
The parties have agreed that orders should enter for joint legal custody of Max with Max to reside principally with the defendant. The court must, therefore, consider the desirability of the defendant's securing full time employment. See § 46b-82 of the General Statutes. One reason she had terminated her position with Miro Builders was her belief that Max needs her care in the afternoon rather than child care. Her other consideration was the cost of child care viz-a-viz what she was earning in her present job.
Finally, an issue the court needs to consider in determining alimony is the duration of an alimony award. One of the factors the court must consider is the length of the marriage. The marriage in this case is one of eight years' duration. The defendant has a demonstrated earning capacity. Balancing all the factors of § 46b-82 of the General Statutes, the court is of the opinion that a period of six (6) years of alimony will be a sufficient period to permit the defendant to return to full time employment and the parties' child of sufficient age so that he will not need mother's attention after school hours. This is not to suggest the he will not need activities and/or sports to fill this time period.
The defendant has incurred consequential fees in connection with the resolution of the division of the proceeds of sale of the 7 Riverview Road, Westport property. It developed that the defendant did not have an undivided one half interest in this property with the plaintiff. Instead it developed that the plaintiff's mother and father also had an interest in this property but led both their son and the defendant to believe they owned it free of any claim by the parents. Defendant's counsel, in resolving this matter, incurred fees totaling $25,000 plus. See defendant's financial affidavit and footnotes 8 and 9. Plaintiff's counsel has incurred fees in the approximate amount of $10,000. It is appropriate in the court's opinion that plaintiff contribute toward defendant's counsel's fees. The court shall, therefore, make an appropriate order in this regard.
In determining the proper orders in this case, the court must consider the factors set forth in § 46b-81, § 46b-82 and § 46b-84 of the General Statutes together with the provisions of § 46b-62 dealing with attorney's fees. With respect to support, the court must also consider the provisions of § 46b-215b of the General Statutes and the child support guidelines. The court has considered all of the factors in the aforementioned statutes and the child support guidelines in making its determinations and has considered all of the evidence, the parties' CT Page 7972 financial affidavits, the parties' claims for relief and all of the applicable case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366,368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria."Weiman v. Weiman, 188 Conn. 232, 234 (1982).
The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
4. Neither party is at fault for the breakdown of the marriage. The court enters the following orders:
1. A decree of dissolution of the parties' marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. There shall be joint legal custody of the minor child, Max Rubin, born December 12, 1995, with the primary and principal place of residence of said child with the defendant mother with reasonable and flexible rights of visitation as agreed upon by the parties.
3. The plaintiff shall pay to the defendant by way of alimony the sum of Two Thousand Five Hundred ($2,500) Dollars per month, payable weekly in the amount of Five Hundred Seventy-seven ($577) Dollars, commencing the first Friday following the date hereof and continuing for a period of six (6) years terminable upon the death of either of the parties or the defendant's remarriage. Said alimony amount or term may be continued, set aside, altered or modified pursuant to the provisions of § 46b-86 (a) or § 46b-86 (b) of the General Statutes. The parties having executed a waiver of the provisions of § 52-362 (b) of the General Statutes, a contingent order for wage withholding shall enter.
4. The plaintiff shall pay to the defendant by way of support for the minor child the sum of Two Hundred Thirty-nine ($239) Dollars per week commencing the first Friday CT Page 7973 following the date hereof. Said support shall terminate upon the plaintiff's death, the child's death, emancipation or marriage, the child no longer residing with the defendant, or the child attaining the age of eighteen, whichever event shall first occur. In the event the child, upon attaining the age of eighteen, has not completed the twelfth grade, said support shall continue to the age of nineteen or until the child completes twelfth grade, whichever event shall first occur. A contingent order for wage withholding shall issue to secure said payment of support.
5. The plaintiff shall maintain the present health insurance for the minor child as currently exists for the child. He shall maintain said insurance for so long as he is obligated to pay child support. Unreimbursed medical expenses for the child shall be shared equally.
6. The parties shall share equally all child care costs.
7. The plaintiff shall maintain $150,000 of life insurance for the benefit of the minor child for so long as he is obligated to pay child support. He shall maintain $100,000 of life insurance naming the defendant as irrevocable beneficiary for so long as he is obligated to pay alimony.
8. The plaintiff shall cooperate with the defendant in seeking to continue insurance coverage for the defendant pursuant to COBRA, and she shall be responsible for the cost of same for the period allowed by law.
9. Each party shall retain his or her proceeds from the sale of the Riverview Road property in Westport free of any claim or demand by the other party.
10. Those assets listed on each of the parties' financial affidavits shall be his or hers free of any claim by the other party.
11. The parties shall divide their tangible personal property between them as they shall agree. In the event of any dispute or disagreement in the division of such property, they are referred to the Family Relations Division for assistance in the resolution of such dispute or disagreements, and if such is unsuccessful, they shall return to court for further orders.
12. The plaintiff shall be responsible for $3,700 worth of charges on the defendant's credit cards and shall pay the defendant said sum within thirty (30) days of the date hereof.
13. Except as stated in paragraph 12 hereof, each party shall be responsible for those liabilities listed in his or her financial affidavit and shall indemnify and hold harmless the other party from any claim or demand thereon.
14. The plaintiff shall pay to the defendant the sum of Ten Thousand ($10,000) Dollars as a contribution to her counsel fees.
Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III JUDGE TRIAL REFEREE CT Page 7974